**UNITED STATES of America,**
**Appellant,**

v.

**RESEDA BOWL, INC., Appellee.**

**No. 19291.**

United States Court of Appeals
Ninth Circuit.

April 20, 1965.

John B. Jones, Jr., Acting Asst. Atty. Gen., Lee A. Jackson, C. Guy Taklock, Wm. A. Friedlander, Attys., Dept. of Justice, Washington, D. C., Thomas R. Sheridan, U. S. Atty., Loyal E. Keir, Asst. U. S. Atty., Chief, Tax Section, Charles H. Magnuson, Asst. U. S. Atty., Los Angeles, Cal., for appellant.

Ernest R. Mortenson, Clyde R. Maxwell, Pasadena, Cal., for appellee.

Before BARNES, JERTBERG and DUNIWAY, Circuit Judges.

JERTBERG, Circuit Judge:

Appellee, hereinafter taxpayer, recovered a judgment in the District Court against the United States of America, hereinafter appellant, in the amount of $2424.15, plus interest, resulting from the claimed overpayment of Federal Excise (cabaret) taxes in such amount for the period March 1, 1959 through March 31, 1961, inclusive.

From such judgment appellant has appealed, and specifies that the District Court erred:

1. In ruling that the taxpayer paid, with his returns, all of the tax due under the statute, in that it failed to give the proper effect to the uncontested and uncontestable fact that the taxpayer had failed to meet the requirement of the applicable Treasury Regulations that, in order to avoid paying the cabaret tax upon a base consisting of the total receipts for covered sales, it must evidence in one of three specified ways the fact that the tax was included therein and had been passed on to the customers.

2. In holding that the deficiency assessment in the amount of $2,424.15 constituted the imposition of an excise tax upon an excise tax and was therefore uncollectible under the statute.

Section 4231 of the Internal Revenue Code of 1954, 26 U.S.C., 1958 ed., in pertinent part provides:

"SEC. 4231. IMPOSITION OF TAX.

"There is hereby imposed:

\*      \*      \*      \*      \*

"(6) [as amended by Sec. 131(c),

Excise Tax Technical Changes Act of 1958, P.L. 85–859, 72 Stat. 1275 and Sec. 1, Act of April 8, 1960, P.L. 86–422, 74 Stat. 41] *Cabarets.*—A tax equivalent to 10 percent of all amounts paid for admission, refreshment, service, or merchandise, at any roof garden, cabaret, or other similar place furnishing a public performance for profit, by or for any patron or guest who is entitled to be present during any portion of such performance. The tax imposed under this paragraph shall be returned and paid by the person receiving such payments; except that if the person receiving such payments is a concessionaire, the tax imposed under this paragraph shall be paid by such concessionaire and collected from him by the proprietor of the roof garden, cabaret, or other similar place. No tax shall be applicable under paragraph (1) or (2) on account of an amount paid with respect to which tax is imposed under this paragraph.

\*      \*      \*      \*      \*"

Prior to May 1, 1960, the rate of tax was 20 per cent. Since the period here involved spans the date of change, the tax for part of the period is computed at the 20 per cent rate and part at the 10 per cent rate.

The applicable Treasury Regulations 43 (1941 ed.) in pertinent part provides:

"Sec. 101.13 [as amended by T.D. 5385, 1944 Cum.Bull. 637]

*"Basis, rate, and computation of tax.*

\*      \*      \*      \*      \*      \*

"(d) Where the tax is passed on to the patrons, which may be shown by any one of the three methods outlined below, the amount thereof shall be excluded in determining the total amount of the charges upon which the tax is to be computed:

"(1) The cabaret tax at the rate of 20 per cent of the total amount charged for admission, refreshment, service, and merchandise is

entered and shown as a separate item on the waiters' checks or bills given to the patrons.

"(2) The charge for admission, refreshment, service or merchandise and the cabaret tax of 20 per cent applicable thereto are rung up on separate keys of a cash register and recorded under separate symbols on the cash register tape.

"(3) Signs are prominently displayed, or statements are printed conspicuously on menus or price lists, reading as follows: 'All prices include 20 per cent Federal cabaret tax.' Where this method is used, the tax due for any month on the basis of 20 per cent of the total amount paid by the patrons for admission, refreshment, service, and merchandise, exclusive of the tax passed on to them, may be computed by dividing the total receipts for the month by 120 and multiplying the result by 20."

Section 101.13(e) of the Regulations goes on to state that "An establishment subject to the cabaret tax has the option of using whichever of the foregoing three methods it may select."

■ Taxpayer operated a bowling alley, cocktail bar and coffee shop in Reseda, California, and, in connection with the operation of the cocktail bar, it furnished dancing facilities and vocal and instrumental musical entertainment for the benefit of its patrons which made it liable for the tax imposed upon cabarets by Section 4231(6) of the 1954 Code. During the period here involved (March 1, 1959 through March 31, 1961), and in connection with the operation of the cocktail bar, the taxpayer provided the above-mentioned entertainment from approximately 9:00 p. m. to 2:00 a. m., usually five nights a week.

The taxpayer's sales were recorded on a cash register which had in addition to the regular keys, four special keys marked "Liqr", "Beer", "Misc" and "Othr". Prior to the entertainment period, which usually commenced at 9:00 p. m., sales were rung up on the two top keys which also print on the tape and on a cash register receipt the symbols either "Liqr" or "Beer". After the entertainment began, sales were rung up on the two lower keys which printed on the tape and on the cash register receipts the symbols either "Misc" or "Othr". Each customer was given a cash register receipt which contained the amount paid and the symbol either "Othr" or "Misc" and the retained tape in the cash register contained the identical amount and symbol.

From the daily total appearing on the retained cash register tape, the accountant for the taxpayer entered on a daily sheet the total of liquor sales made during the entertainment period and also the total of beer sales. Posting of the amount of sales of liquor and beer during the entertainment period were made by the accountant on monthly sheets under the heading "Excise, spirits, beer". The amounts of monthly sales were recorded in a general ledger account marked "Excise Tax Payable."

The amounts appearing on the monthly sheets as excise tax and the corresponding amount appearing in the general ledger account "Excise Tax Payable" were entered by the accountant on the taxpayer's quarterly federal excise tax returns. The total amount of excise tax thus reported and paid during the period here in question was $14,293.70. In determining the portion of the receipts to which the statutory cabaret tax percentage was to be applied in computing the tax due, the taxpayer's accountant excluded from total receipts as shown on the cash register tapes an amount equal to the statutory percentage of both the federal excise tax and the state sales tax, on the theory that this portion represented a passing on to the customers of these taxes, rather than a charge for the beverages themselves. Upon audit, the examining agent rejected the theory that the total recorded receipts included the federal excise tax and added back into the taxable receipts, as shown on the returns, the $14,-

293.70 cabaret tax reported for the period in question and recomputed the tax due by applying the percentage to the increased total taxable receipts for that period. The total tax thus arrived at was $16,717.85; the agent deducted the $14,293.70 representing excise taxes already paid and thus fixed the additional tax due as $2,424.15—the amount (together with interest due) basically at issue in this case.

Section 4231(6), in substance, imposes a tax [equivalent to 20 per cent for the period up to May 1, 1960 and 10 per cent thereafter] on all amounts paid for refreshments at any cabaret by or for any patron, and requires that the tax shall be returned and paid by the person receiving such payments.

The taxpayer does not dispute the facts that during the period in question it owned and operated a cabaret and during such period received amounts paid from the sale of refreshments (beer and wine) by or for its patrons, and that the amount of such payments were subject to the tax and that such tax was laid upon it as the person receiving such payments.

The statute does not exclude from the operation of the tax any part of the amounts so paid and received but the tax applies to the entire amounts received. In this connection, however, it is to be noted that the Treasury Regulation quoted above purports to permit taxpayer to exclude from the tax base amounts added to the price paid by customers for refreshments, etc., for the specific purpose of passing on the economic impact of the tax to the customers. Under the regulation this may be accomplished by the taxpayer in any one of three ways:

1) If the tax "is entered and shown as a separate item on the waiter's checks or bills given to the patrons;" or

2) If the charge for admission, refreshments, etc., and the tax applicable thereto "are rung up on separate keys of a cash register and recorded under separate symbols on the cash register tape;" or

3) Signs are permanently displayed or printed on menus or price lists reading as follows: "All prices include 20 per cent Federal cabaret tax."

The record reveals and counsel for taxpayer conceded on oral argument that the tax imposed was not entered and shown as a separate item on the waiter's checks or bills given to the customers; that the charge for refreshments, etc., and the tax applicable thereto was not rung up on separate keys of a cash register or recorded under separate symbols on the cash register tape; and that no signs were displayed and no statements were printed on menus or price lists to the effect that the prices included the Federal cabaret tax.

■ The taxpayer argues that the regulation is invalid since it purports to levy a tax on the cabaret tax without having statutory authority so to do, or, in the alternative "is arbitrary and unreasonable if it is to be read as providing exclusive methods whereby the tax can be segregated from the taxable sales of refreshments because it then must be considered as either restricting the scope of a statute to the three methods set out in the regulation, or as enlarging the scope of that statute by providing an exemption which the statute does not contain." Similar arguments under a similar statute and under a similar Treasury Regulation were found to be demonstrably specious by the Supreme Court in Lash's Products Co. v. United States, 278 U.S. 175, 49 S. Ct. 100, 73 L.Ed. 251 (1929).

Before the court in that case was a suit by taxpayer to recover the amount of certain taxes paid under the Revenue Act of 1918, which statute imposed on "soft drinks, sold by the manufacturer, * * * in bottles or other closed containers, a tax equivalent to 10 per centum of the price for which so sold." This tax was paid by the taxpayer, calculated at ten per cent of the sum actually received by it for goods sold. The taxpayer notified its customers beforehand that it paid the ten per cent tax. Taxpayer contended that in this way it passed the tax on and that the true price of the goods was the sum received less the amount of

the tax. The Supreme Court stated, at page 176, 49 S.Ct. at page 100:

> *"The phrase 'passed the tax on' is inaccurate, as obviously the tax is laid and remains on the manufacturer and on him alone.* Heckman & Co. v. I. S. Dawes & Son Co., 56 App.D.C. 213, 12 F.2d (154). *The purchaser does not pay the tax. He pays or may pay the seller more for the goods because of the seller's obligation, but that is all.* Still the question as to the meaning of the statute remains.

"The petitioner supports its position by a regulation of the Commissioner that when the tax is billed as a separate item it is not to be considered as an increase in the sale price. *Naturally a delicate treatment of a tax on sales might seek to avoid adding a tax on the amount of the tax. But it is no less natural to avoid niceties and to fix the tax by actual price received. Congress could do that as properly as it could have added one-tenth to the tax on the price as fixed by the other items determining the charge to the buyer. The price is the total sum paid for the goods. The amount added because of the tax is paid to get the goods and for nothing else.* Therefore it is part of the price, and if the statute were taken literally, as there would be no reason for not taking it if it were now passed for the first time, there might be difficulty in accepting the Commissioner's distinction even if the tax were made a separate item of the bill. *But if, in view of the history in the Solicitor General's brief, we assume with him that the practice of the Commissioner has been ratified by Congress,[1] we agree with his argument that the petitioner must take the privilege as it is offered.* It did not bill its tax as a separate item, and the Commis-

sioner's Regulations notified it that *'if the sale price of a taxable beverage is increased to cover the tax, the tax is on such increased sales price'* although they purported to make a different rule *'when the tax is billed as a separate item.'"* (Emphasis ours). [Footnote added].

█ If the regulation in issue were to be declared invalid, there remains only the statute which furnishes no warrant for excluding any part of the amounts paid by customers for refreshments, etc. Since the only legal basis for the exclusion of receipts sought by taxpayer is the privilege conferred by the Regulation, the taxpayer "must take the privilege as it is offered." We believe that it must show substantial compliance with at least one of the three methods set forth in the Regulations.

█ The implicit, if not the apparent, findings of fact of the District Court that the amount of the tax had been added to the price of the refreshments is without evidentiary support. The documentary evidence as to the prices charged for the beverages sold consists only of the cash register tapes. These show only a total price paid, with no indication as to what items are, or are not included therein. Although different symbols were used on the tape to record sales after 9:00 p. m., this fact alone does not establish that the tax had been added to the post 9:00 p. m. prices. This fact was conceded by counsel for the taxpayer in the following colloquy with the District Court:

"The Court: * * * What does the customer get to know to pay his bill? * * *

"Mr. Mortenson: He gets a little ticket—

\* \* \* \* \* \*

"The Court: That doesn't show any tax, does it?

"Mr. Mortenson: No, it doesn't. It just has one figure.

1. For whatever significance it may have, we note that the regulatory provision in the particular form here in issue was first promulgated in 1944 (Treasury Regulations 43 (1941 ed.), as amended by T.D. 5385, 1944 Cum.Bull. 637, 638) and that the statute was re-enacted, substantially unchanged, in the 1954 Code.

* * * * * *

"Mr. Mortenson: You have to draw inferences. The mere fact that prices go up does not necessarily mean that tax is included. The prices might go up because the costs went up after 9:00 o'clock.

"But as far as the Government is concerned, it can take these tapes and it can find the place where there is a break, and where the prices go up, and where the keys change.

"The Court: I know, but how can you tell the tax is in there, that is the problem.

"Mr. Mortenson: You can't tell for sure.

"The Court: * * *

"The regulations require that you use one of those three methods, and you have not used any one of the three.

"Mr. Mortenson: We have used the method of changing keys when the tax goes on.

"The Court: That's right, but you don't have the symbol.

"Mr. Mortenson: That is true. The Government would want us to have one of those that show the tax, we would have to have two buttons to push every time there was a sale.

* * * * * *."

 We have reviewed the testimony given by taxpayer's accountant, and suffice it to say that we find such testimony insufficient to support a finding of fact that the taxpayer's receipts did, as a matter of fact, include the amount of the Cabaret tax. We have examined the decision in McDonald v. United States, 209 Fed.Supp. 741 (W.D.Ky.1962), relied upon by the taxpayer and find it significantly distinguishable on the facts from the instant case.

Under both findings of fact and conclusions of law the Court found that the $2,424.15 assessed against and paid by taxpayer constitutes an excise tax on the same excise tax and not an excise tax on amounts paid for admission, refreshment, service or merchandise. We believe such findings to be erroneous and can only be supported if it be established that the additional amount allegedly added to the price of the refreshments on account of the cabaret tax, itself constituted a tax. This the taxpayer, upon whom the burden of proof rested failed to do.

The judgment of the District Court is reversed and the cause remanded to the District Court with directions to enter judgment in favor of the appellant.